UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SCOTT SHEWBRIDGE,

        Plaintiff,

   v.

EL DORADO IRRIGATION DISTRICT,
a municipal corporation, ANE
DEISTER, DAVID POWELL, THOMAS
CUMPSTON, GEORGE WHEELDON, and
GEORGE OSBORNE,

        Defendants.
_____/

NO. CIV. S-05-0740 FCD PAN

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    This matter comes before the court on defendants' motion to dismiss, in part, plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, defendants move to dismiss plaintiff's claim for wrongful

termination in violation of public policy on the ground that it is untimely under the California Tort Claims Act.

For the reasons set forth below, defendant's motion is granted with prejudice.

**BACKGROUND**

In November of 2001, defendant El Dorado Irrigation District ("EID") hired plaintiff as the Senior Engineer in charge of engineering for its Drinking Water Division; EID later assigned plaintiff as the Engineering Co-Head for Hyrdroelectric and Watershed Management. (Pl.'s Cmpl., filed April 15, 2005, at 3.)

During 2002, Ane Deister ("Deister"), the general manager of EID, repeatedly chastised and verbally abused plaintiff because he reported various misrepresentations, violations of the Brown Act, and improper coercion of subordinate employees by defendants. (Id.)

In April 2003, Deister solicited negative comments from other personnel to use against plaintiff with the intent to terminate him. (Id. at 4.) David Powell ("Powell"), who served as EID Director of Facilities Management, drafted a notice of intent to terminate plaintiff. (Id.) After a public meeting on April 21, 2003, Deister, Powell, Thomas Cumpston ("Cumpston") (general counsel for EID), George Wheeldon ("Wheeldon") (member of the board of directors), and George Osborne ("Osborne") (member of the board of directors) discussed plaintiff's termination. (Id.) In the course of their discussion, these individuals sought and provided information that could be used against plaintiff. (Id.)

On May 1, 2003, Deister ordered plaintiff and other EID

2

1  staff to withhold information from the Board and the public
2  regarding anticipated delays to complete facilities needed to
3  provide drinking water to customers in the District.  (Id.)
4  Later that month plaintiff reported misrepresentations and
5  violations of law by EID to the El Dorado County Grand Jury, the
6  California Department of Fish and Game, the California State
7  Water Resource Control Board, the California Department of Health
8  Services, the California Attorney General's office, and a private
9  group, Citizens for Water.  (Id.)  In response, Deister and
10 Cumpston attempted to prevent plaintiff from speaking at a
11 conference, and Deister made false representations to others
12 regarding the quality of plaintiff's work with EID.  (Id.)

13      Plaintiff continued to report problems with EID.  From May
14 to June 2003, he reported problems in two EID water reports to
15 the Sacramento Bee, Mountain Democrat, and the El Dorado Hills
16 Telegraph. (Id. at 4.)  In July 2003, plaintiff filed a complaint
17 to the Department of Labor Occupational Safety and Health
18 Administration concerning EID's meter sales.  (Id. at 5.)
19 Plaintiff once again appeared before the El Dorado County Grand
20 Jury in July of 2003.  (Id.)  On September 9, 2003, plaintiff
21 delivered a presentation involving water issues in El Dorado
22 Hills, California to 50 individuals, which was reported in local
23 newspapers.  On November 15, 2003, the Citizens Water Advisory
24 Board confirmed plaintiff's allegations regarding the inadequacy
25 of EID's water supply and infrastructure as well as its false
26 reporting.  (Id.)

27     EID delivered notice of intent to terminate plaintiff on
28 August 8, 2003.  (Id.)  An abbreviated *Skelly* hearing was held

3

1  where all issues were not fully litigated.  (Id.)  On September
2  11, 2003, EID terminated plaintiff.  (Id.)  On March 29, 2004,
3  the Board of Directors of EID completed an abbreviated appeal of
4  plaintiff's termination and upheld EID's decision.  (Id.; Opp'n,
5  filed September 9, 2005, at 3.)  Plaintiff presented a written
6  claim for damages with the Clerk of the Board of Directors of EID
7  on September 10, 2004.  (Pl.'s Cmpl. at 3.)

8      On the basis of these facts, plaintiff alleges claims
9  against defendants for: (1) violation of plaintiff's federal
10 civil rights under 28 U.S.C. section 1983, (2) conspiracy to
11 violate plaintiff's federal civil rights under 28 U.S.C. section
12 1983, and (3) wrongful termination in violation of public policy.
13 By the instant motion, defendants move to dismiss the wrongful
14 termination claim.

**STANDARD**

16     On a motion to dismiss, the allegations of the complaint
17 must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322
18 (1972).  The court is bound to give the plaintiff the benefit of
19 every reasonable inference to be drawn from the "well-pleaded"
20 allegations of the complaint.  Retail Clerks Int'l Ass'n v.
21 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff
22 need not necessarily plead a particular fact if that fact is a
23 reasonable inference from facts properly alleged.  See id.

24     Given that the complaint is construed favorably to the
25 pleader, the court may not dismiss the complaint for failure to
26 state a claim unless it appears beyond a doubt that the plaintiff
27 can prove no set of facts in support of the claim which would
28 entitle him or her to relief.  Conley v. Gibson, 355 U.S. 41, 45

4

(1957); NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendant ha[s] violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

## ANALYSIS

Defendants move to dismiss plaintiff's claim for wrongful termination in violation of pubic policy, arguing that plaintiff failed to timely comply with the California Tort Claims Act ("CTCA"). California Government Code section 911.2 provides:

> A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) not later than six months after the accrual of the cause of action.

Defendants contend that plaintiff's wrongful termination claim accrued on September 11, 2003, the date EID terminated plaintiff. To the contrary, plaintiff asserts that his claim accrued on March 29, 2004, the date the EID Board of Directors completed an abbreviated appeal of plaintiff's termination and upheld EID's decision to terminate plaintiff. Thus, this court must determine when plaintiff's claim accrued.

A wrongful termination claim accrues when the employment relationship is "actually terminated, not the date on which an employee is unequivocally informed his employment will be

5

terminated." <u>Colores v. Board of Trustees</u>, 105 Cal. App. 4th 1293, 1320 (2003). Plaintiff concedes he was terminated on September 11, 2003, and that generally, a claim for wrongful termination accrues on the date of actual termination. Nonetheless, he argues, *in this case*, his claim was "premature," and thus had not accrued, until his appeal was finalized. (Pl's. Opp. Mtn. Dis. at 3.) The parties did not cite, nor is the court aware of, any precedential authority determining whether the exercise of appeal rights alters the accrual of a wrongful termination claim.

The court, however, finds the decision in <u>Embury v. King</u>, 191 F. Supp. 2d 1071 (N.D. Cal. 2001) instructive because even though it does not decide the issue directly,[1] it raises similar facts. In <u>Embury</u>, the plaintiff, an associate professor of medicine, was terminated from his position on December 31, 1999. <u>Id.</u> at 1075. Thereafter, in May 2000, he filed a grievance to his employer university's Committee on Privilege and Tenure objecting to his termination. In January of 2001, the committee completed its investigation, denying the plaintiff all his requested relief. <u>Id.</u> Despite these later grievance proceedings, the court found that the plaintiff's wrongful termination claim accrued on the date of termination, December 31, 1999. <u>Id.</u> at 1081.

---

[1] In <u>Embury</u>, the issue presented was whether the plaintiff's claim began to accrue when he was *informed* he *would be* terminated. The court, applying <u>Romano v. Rockwell Int'l, Inc.</u>, 14 Cal. 4th 479 (1996), held that "the statute of limitations for a wrongful termination cause of action begins to run when a plaintiff is actually terminated, not when he is given notice of impending termination." <u>Id.</u> at 1081.

Like <u>Embury</u>, here, the court finds that plaintiff's wrongful termination claim accrued on the date of plaintiff's termination, September 11, 2003, not when the appeal was finalized on March 29, 2004. Similarly the date of a court judgment is not altered by an appeal of the judgment so an employee's administrative appeal of his termination does not affect the termination *date* itself. Plaintiff concedes he was terminated on September 11, 2003; that fact is in no way altered by his internal appeal of his termination. As such, plaintiff's CTCA claim, filed September 10, 2004, is untimely; plaintiff's claim was due at the latest on March 4, 2004.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss as to plaintiff's claim for wrongful termination in violation of public policy is GRANTED with prejudice.

IT IS SO ORDERED.

DATED: September 22, 2005

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

7